IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 16 CR 80 |
| v. | ) | |
| | ) | Hon. Amy J. St. Eve |
| VANDETTA REDWOOD | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Vandetta Redwood ("Defendant") moves the Court to suppress both her post-arrest statements, including 1) any statements she made to the Chicago Police Department ("CPD") on April 28, 2014 and 2) her January 28, 2016 testimony in the state court trial of Donell Flora. For the following reasons, the Court denies Defendant's motion to suppress her post-arrest statements, in part, and denies it, in part, as moot.

## BACKGROUND

### I. The CPD Investigation and Defendant's Arrest

The charges against Defendant are premised on events that took place on April 28, 2014, during a fight among high school students. Defendant is charged with giving D.P., her then 14-year old cousin, a loaded firearm and telling her to shoot another 14-year old girl. D.P. then used the firearm to shoot two teenage girls, killing one of them.

Various eyewitnesses identified D.P. as the shooter. Shortly after the shooting, a police officer stopped D.P. a few blocks away from the scene because she matched the description of the shooter. Eyewitnesses identified D.P. as the shooter, and CPD officers took her into custody. At the police station, D.P. waived her *Miranda* rights. Officers then interviewed her with her mother present and videotaped the interview. During the interview, D.P. admitted to shooting the two girls. D.P. admitted that Donell Flora (her uncle), Redwood, whom she referred to as

her "auntie," her cousin and her friends went to the scene of the shooting with her. She said that Donnell Flora initially gave her the gun, and then Redwood took the gun from her. D.P.'s mother then interjected and said "and Vendetta [Redwood] passed it back to you." Although D.P.'s mother did not witness this event because she was not present at the scene of the shooting, she told the officers that D.P.'s friends and family members who were present at the scene had told her what had happened.

After the interview, the officers and D.P.'s mother left the police station. A large group of D.P.'s friends and family had gathered outside the station, including Defendant Redwood. D.P.'s mother then identified Defendant, and the police arrested Redwood. The police also arrested D.P.'s uncle, Donnell Flora.

The police then took Defendant Redwood to an interview room and read her her *Miranda* rights. Defendant waived her rights and spoke to the officers. During the questioning, she denied that she was at the scene of the shooting. Defendant said "I came down there later on that day after it [the shooting] happen".

## II. Defendant's State Charges

On May 1, 2014, Defendant was initially charged by complaint in state court with one count of Mob Action, for going to the scene with a fourteen year old, and one count of Obstructing Justice, for falsely representing to the CPD officers that she was not at the scene of the shooting. She was not charged in state court with any weapons charges. When Defendant appeared for a preliminary hearing on the state charges on May 23, 2014, the state court dismissed the charges for lack of probable cause. No additional state charges were brought.

During the preliminary hearing, the State called one detective and played a cell phone video. Apparently the State played the video once at full speed. The judge dismissed the Mob Action and Obstruction of Justice charges, noting the following:

> When I viewed the video it was very poor, a lot of people coming in and out, pictures of the street, choppy, a number of people there, many many people there going back and forth, in and out.

(Gov. X 3 at 20–21.) The judge did not provide any additional reasoning.

A state court murder trial subsequently proceeded against Donnell Flora, D.P.'s uncle, for his involvement in this incident. Defendant was called to testify at the State trial but asserted her Fifth Amendment privilege against self-incrimination. Flora was convicted of murder.

### III. Defendant's Federal Charges

The federal government began investigating Defendant in approximately December 2014. On February 10, 2016, a federal grand jury returned a two-count indictment (the "Indictment") against Defendant. (R. 1.) Count One charges Defendant with transferring a handgun and ammunition, namely, a loaded Smith & Wesson, Model 642 Airweight, .38 special caliber revolver, bearing serial number CRZ6547, to Minor A, knowing and having reasonable cause to believe that Minor A was a juvenile, in that she had not attained eighteen years of age, and knowing and having reasonable cause to believe that Minor A intended to carry and otherwise possess and discharge and otherwise use the handgun and ammunition in the commission of a crime of violence, namely first degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm, in violation of 18 U.S.C. §§ 922(x)(1)(A), (B) and 924(a)(6)(B)(ii). (*Id.*) Count Two charges Defendant with knowingly possessing in and affecting interstate commerce a firearm, namely, the same handgun identified above in Count One, which firearm had traveled in interstate commerce prior to Defendant's possession of the firearm, within a distance of 1,000

3

feet of the grounds of Oliver Wendell Holmes Elementary School and Visitation Catholic School, a place that Defendant knew and had reasonable cause to believe was a school zone, in violation of 18 U.S.C. §§ 924(q)(2)(A) and 924(a)(4).  (*Id.*)  Defendant now seeks to suppress her post-arrest statements, claiming her arrest was not supported by probable cause.

**ANALYSIS**

Defendant moves the Court to suppress both 1) her April 28, 2014 statements to CPD and 2) her statements during the Flora trial.  Defendant argues that the admission of the compelled statements gave during the Flora trial would violate her due process rights.  The government has represented that it "does not intend to use any of these statements [from the Flora trial] in its case in chief."  (R. 65 at 1.)  As such, the Court denies this aspect of the motion as moot.

Defendant's argument to suppress her April 28, 2014 statements is two-fold.  First, she argues that "[t]he issue of probable cause for the State arrest, immediately preceding the statements at issue, has been considered by the State court.  The State charges were dismissed for a lack of probable cause."  (*Id.*)  Second, Defendant contends that "there was no probable cause to support Ms. Redwood's arrest by the Chicago Police Department."  (*Id.*)  The Court disagrees with both of Defendant's arguments and finds that her arrest was supported by probable cause.

**I.      The State Court Probable Cause Determination is Immaterial**

Defendant first argues that her arrest was not supported by probable cause as evidenced by the state court's decision to dismiss her state charges.  The state court's probable cause determination, however, is irrelevant.  "[W]hen 'determining whether there has been an unreasonable search or seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out.'"  *United States v. Hill*, 898 F.2d 72, 74–75 (7th Cir.

1990) (quoting *Elkins v. United States*, 364 U.S. 206, 223–24, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960)); *see also Patterson v. Lash*, 452 F.2d 150, 152 (7th Cir. 1971) ("The sole question for us is whether under *federal constitutional law* the evidence used in Indiana was inadmissible as fruit of an unreasonable search in denial of [the defendant's] Fourth Amendment right.") (emphasis added); *Elkins*, 364 U.S. at 224 (The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed."). Thus, this Court must conduct an independent probable cause inquiry.

Moreover, the state court determined, after a preliminary hearing, that there was no probable cause for the state *charges*, not the initial arrest. Indeed, the state court ruled that "[t]he State has a minimal burden here and they have not met it. There's a finding of no probable cause[, as to] [b]oth counts." (Gov. X 3 at 20–21.) Importantly, "the legal standard and the evidentiary requirements for probable cause are more stringent at the preliminary hearing than at the arrest stage." *Boyce v. Fernandes*, 77 F.3d 946, 950 (7th Cir. 1996) (citing *Williams v. Kobel*, 789 F.2d 463, 469 (7th Cir. 1986)); *see also Morgan v. City of Chicago*, — F.3d —, No. 14-3307, 2016 WL 2641844, at *1 n.1 (7th Cir. May 6, 2016) (citing *Kobel*, 789 F.2d at 470). Indeed,

> [t]he purpose of the preliminary examination [pursuant to the Illinois preliminary hearing statute] is to judicially determine if there is probable cause to hold the accused for trial, to inform him of the charges against him, fix bail, and perpetuate testimony. The probable cause determination made by the judge is whether there is probable cause to believe an offense has been committed by the defendant [.] . . . Initially, we note that the statute does not require the judge to evaluate the presence or absence of probable cause at the time of arrest; absent a motion challenging the validity of the arrest, the presiding judicial officer bases the probable cause to bindover determination on evidence exclusively presented at the hearing and does not and should not consider the separate issue of whether there was probable cause to arrest the defendant unless the defendant specifically raises the issue. In other words, the judge will not address the issue of whether the officers had probable cause to arrest the defendant unless the defendant files a motion challenging the legality of the arrest. . . . Moreover, because the probable

5

> cause determination after a preliminary hearing is made during a legal proceeding incorporating all the safeguards of evidentiary rulings as in a trial, it is an entirely separate legal proceeding distinct from the probable cause judgment to arrest made by the police officer in the field.

*Kobel*, 789 F.2d at 468 (citations and quotation marks omitted). The probable cause analysis for a charging decision is more stringent than an arresting decision, in part, because of the circumstantial differences. Put differently,

> The arrest standard, directed primarily at the police, is understandably expressed in terms of the factual and practical considerations of everday life on which reasonable and prudent men, not legal technicians, act, while the charging decision being reviewed at the preliminary hearing is, by its nature, one involving the legal technicians of the prosecutor's office. *Moreover, under the arrest standard considerable uncertainty must be tolerated on occasion because of the need to allow the police to take immediate affirmative action in ambiguous circumstances, but no comparable exigencies are present at the time the charging decision must be made.* These distinctions would suggest, for example, that there is good reason to be more demanding at the preliminary than at arrest on the question of whether a crime has occurred. *Arrests must be made even when there is considerable uncertainty on that score*, but (as at least some jurisdictions have recognized) there is no reason why this aspect of the case cannot be made much more certain by the time of the preliminary hearing.

*Id*. (emphasis in original) (citing 2 LaFave & Israel, *Criminal Procedure* § 14.3(a) at 258 (1984)); *see also Helton v. Dornan*, No. 97 C 0220, 1999 WL 58641, at *7–8 (N.D. Ill. Jan. 26, 1999) (citing *Kobel*, 789 F.2d at 468–69). Indeed, probable cause at the arrest stage "is to be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training." *Id*. (citing *United States v. Davis*, 458 F.2d 819, 821 (D.C. Cir. 1972)). As such, Defendant's argument is misapplied.

## II. Defendant's Arrest was Supported by Probable Cause

Defendant argues that, regardless of the state court decision, "there was no probable cause to support Ms. Redwood's arrest by the Chicago Police Department." (R. 44 at 1.) Specifically, Defendant asserts the following:

> [t]he statement that resulted in Ms. Redwood's arrest was that of the minor, D.P.'s, mother who was not present on the scene and was based on supposition. The recorded interview of D.P. establishes that her mother pressured D.P. to mention Ms. Redwood after D.P. had already asserted that she obtained the weapon from her uncle, and father figure, Donnell Flora and that it was handed by and between her friend/s not Ms. Redwood. All Statements obtained from the victim's family and friend's [sic] identified two of D.P.'s friends as the individual's whom passed the firearm back and forth between D.P.

(*Id*. at 1–2.) The Court disagrees.

"An arrest is lawful under the Fourth Amendment so long as it is made based on probable cause." *United States v. Hill*, 818 F.3d 289, 294 (7th Cir. 2016) (citing *Rodriguez v. United States*, — U.S. —, 135 S. Ct. 1609, 1621, 191 L. Ed. 2d 492 (2015)). "Probable cause 'means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id*. (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979)). Importantly, "[w]hether probable cause exists is a 'commonsense, practical question' made considering the totality of the circumstances." *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 230–31, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). Ultimately, "[w]hen a court reviews probable cause determinations, the evidence must be weighed 'as understood by those versed in the field of law enforcement.'" *Id*. (quoting *Gates*, 462 U.S. at 232).

Viewing the totality of the circumstances, the CPD officers had probable cause to arrest Defendant. On April 28, 2014, CPD officers received a report of a shooting in Englewood and learned that the shooting left one minor dead and another injured. In the course of their investigation, CPD officers learned from two eyewitnesses that D.P. was the shooter. Subsequently, D.P. provided a recorded statement to the officers after being read her *Miranda* rights in the presence of her mother. Specifically, D.P. explained that her uncle, Donell Flora,

7

gave her the gun and her "auntie," Defendant Redwood, accompanied her to the fight and, just before the shooting, took the gun. D.P's. mom then explained that Defendant Redwood gave the loaded gun back to D.P. D.P. did not dispute this fact. In light of D.P.'s self-incriminating statement and the implication of her family members in a serious crime, the officers were justified in relying on her identification of Defendant. Indeed, "[s]pecific information from a person who has turned on her partner in crime and told the police about their malfeasance (thus implicating herself as well as her partner) goes a long way toward establishing probable cause. In fact, some . . . sister circuits have held that even an *uncorroborated* account is sufficient to establish probable cause under these circumstances." *United States v. Clark*, 657 F.3d 578, 582 (7th Cir. 2011) (citing *United States v. Harris*, 403 U.S. 573, 583, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971)); *see also United States v. Cruz-Rea*, 626 F.3d 929, 939 (7th Cir. 2010) ("[W]e consider the informant's admission of culpability as an indication of veracity.") (citation omitted); *Harris*, 403 U.S. at 583–84 ("Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause[.]").

Moreover, the CPD officers understood that D.P.'s mother, although not present at the scene of the shooting, had learned of the events from a number of eyewitnesses. D.P.'s mother described to the officers how D.P. gave the gun to Defendant and Defendant returned it to D.P. just before the shooting.

Thus, reviewing the totality of the circumstances as viewed by the CPD officers at the time, there was probable cause to believe Defendant had committed an offense. Importantly, the

officers did not need to have probable cause to believe Defendant had committed the offense charged either in federal court or state court, but simply that "the suspect has committed, is committing, or is about to commit *an* offense.'" *Hill*, 818 F.3d at 294 (emphasis added) (citing *Rodriguez*, 135 S. Ct. at 1621). Here, in light of the totality of the circumstances as "viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest," the CPD officers had probable cause to arrest Defendant Redwood for a number of offenses, including committing mob action, in violation of 720 ILCS 5/25-1(a)(1) and (2), and committing, or aiding and abetting, disorderly conduct, assault, and battery, in violation of 720 ILCS 5/26-1(a)(1), 720 ILCS 5/12-1(a), and 720 ILCS 5/12-3(a), respectively. *Kobel*, 789 F.2d at 468; *see also Campbell v. Reardon*, 780 F.3d 752, 758 n.5 (7th Cir. 2015) ("Felony mob action, under Illinois law, consists of 'the use of force or violence disturbing the public peace by 2 or more persons acting together and without authority of law.'") (citing 720 Ill. Comp. Stat. 5/25-1 (1995)); *see also People v. McLennon*, 2011 IL App. (2d) 091299, 957 N.E.2d 1241, 1249, ¶¶ 28-29 ("To prove the defendant guilty of disorderly conduct, the State had to prove that he knowingly did any act in such an unreasonable manner as to alarm or disturb another or to provoke a breach of the peace.") (citing 720 ILCS 5/26-1(a)(1)); *In re Stephone B.*, 2015 IL App. (1st) 143388-U, 2015 WL 1612105, at *6 ("For the offense of assault, the State must show that respondent, without lawful authority, knowingly engaged in conduct that placed the victims in reasonable apprehension of receiving a battery.") (citing 720 ILCS 5/12-1 (West 2012)); *People v. Ware*, 2016 IL App. (4th) 140573-U, 2016 WL 3035658, at *3 ("Battery, as it relates to this case, occurs when a person 'knowingly[,] without legal justification[,] * * * makes physical contact of an insulting or provoking nature with an individual.'") (citing 720 ILCS 5/12-3(a)(2) (West 2012)). Indeed, simply knowing that Defendant Redwood took the gun from D.P. during

9

the fight gave the CPD officers probable cause to arrest Defendant for attempting to obstruct justice by concealing a weapon previously in the possession of a minor, in violation of 720 ILCS 5/24-3.1(a)(1). *See People v. Green*, 2016 IL App. (4th ) 140436-U, 2016 WL 1221670, at *5–6 ("'A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he or she knowingly * * * [d]estroys, alters, conceals[,] or disguises physical evidence, plants false evidence, [or] furnishes false information.'") (citing 720 ILCS 5/31-4(a)(1)); *see also People v. Comage*, 241 Ill. 2d 139, 149, 946 N.E.2d 313, 319 (2011) (citing 720 ILCS 5/31-4(a)(1)). As a result, Defendant's April 28, 2014 post-arrest statements are not fruit of an unlawful arrest, and the Court denies Defendant's motion to suppress them.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to suppress her April 28, 2014 post-arrest statements and, additionally, her January 28, 2016 statements at the Flora trial as moot.

Dated: June 16, 2016                                                  **ENTERED**

_____
AMY J. ST. EVE
United States District Court Judge