**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | 16 CR 00080 |
| v. | ) | Hon. Amy J. St. Eve |
| | ) | |
| | ) | |
| VANDETTA REDWOOD | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant Vandetta Redwood has moved to dismiss Count Two of the Indictment. For the following reasons, the Court denies Defendant's motion.

## BACKGROUND

On April 28, 2014, a grand jury returned an indictment (the "Indictment") against Vandetta Redwood ("Defendant"). (R. 1.) Count Two of the Indictment charges Defendant with knowingly possessing a firearm in a "school zone" in violation of 18 U.S.C. § 922(q)(2)(A) and 18 U.S.C § 922(a)(4). (*Id.*) In support of this charge, the Indictment alleges that Defendant possessed a Smith & Wesson, Model 642 Airweight, .38 special caliber revolver with the serial number CRZ6547. (*Id.*) Furthermore, the Indictment alleges that Defendant knowingly possessed this firearm within 1,000 feet of the grounds of both Oliver Wendell Holmes Elementary School and Visitation Catholic School, and that Defendant possessed the firearm in and affecting interstate commerce. (*Id.*)

Defendant now moves to dismiss Count Two of the Indictment. Specifically, Defendant challenges Count Two's sufficiency for a myriad of reasons, each of which the Court addresses below.

## LEGAL STANDARD

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Federal Rule of Criminal Procedure 12(b)(3)(B) allows a defendant to make a pretrial motion that challenges the sufficiency of the indictment. *See United States v. Boender*, 691 F. Supp. 2d 833, 837 (N.D. Ill. 2010). A defendant may challenge the indictment's sufficiency by arguing that it fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).

When considering a motion to dismiss that challenges the sufficiency of an indictment, courts focus on the allegations of the indictment and must view all allegations as true and in the light most favorable to the government. *See United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999); *see also United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). The Seventh Circuit has explained that an indictment is sufficient where it 1) states the elements of the crimes charged, 2) adequately informs the defendant of the nature of the charges brought against her, and 3) enables the defendant to assert the judgment as a bar to future prosecutions for the same offense. *See United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013). "As a general matter, indictments are reviewed on a practical basis and in their entirety, rather than in a hypertechnical manner." *United States v. Cox*, 536 F.3d 723, 726 (7th Cir. 2008) (citations omitted). "To successfully challenge the sufficiency of an indictment, a defendant must demonstrate that the indictment did not satisfy one or more of the required elements and that [she] suffered prejudice from the alleged deficiency." *Vaughn*, 722 F.3d at 925; *see also United States v. Castaldi*, 547 F.3d 699, 703 (7th Cir. 2008). A court may dismiss an indictment, or a portion thereof, if its

allegations do not state a violation of the governing statute. *See United States v. Hollnagel*, No. 10 CR 00195, 2011 WL 3664885, at *8 (N.D. Ill. Aug. 19, 2001) (citing *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988)).

I. **Count Two Sufficiently States a Claim**

Defendant seeks to dismiss Count Two on the grounds that it does not sufficiently allege a violation of 18 U.S.C. § 922(q)(2)(A). (R. 47.) Section 922(q)(2)(A) provides that it is a crime "for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate . . . commerce at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C. § 922(q)(2)(A). Section 922(q)(2)(B)(i) explicitly excludes the possession of a firearm on "private property not part of school grounds" from the conduct proscribed under § 922(q)(2)(A). 18 U.S.C. § 922(q)(2)(B)(i). Defendant argues that the offense in question occurred on a sidewalk "immediately adjacent to and abutting a private residence," and that the sidewalk qualifies as "private property." Consequently, Defendant concludes that Count Two of the Indictment fails to state an offense.

To avoid dismissal, an indictment must "allege that the defendant performed acts which, if proven, constituted a violation of the law that he or she is charged with violating." *United States v. Gimbel*, 830 F.2d 621, 624 (7th Cir. 1987). Where an indictment fails to charge a valid statutory violation, a district court may dismiss the indictment "not because the government [can] not prove its case, but because there [is] no case to prove." *Risk*, 843 F.2d at 1061. In *United States v. Bucey*, for example, a criminal appellant challenged the sufficiency of an indictment on the grounds that he was not a "financial institution," as alleged by the indictment, and therefore did not violate the pertinent statute, which required financial institutions to file currency transaction reports. *United States v. Bucey*, 876 F.2d 1297, 1301 (7th Cir. 1989). The Seventh

3

Circuit affirmed the district court's dismissal of the counts in question after agreeing that the defendant did not qualify as a "financial institution" and, consequently, could not have violated the statutory requirements. *Id*. at 1306–07.

"Generally, courts strictly construe criminal statutes against the government and in the defendant's favor." *United States v. Bhutani*, 266 F.3d 661, 666 (7th Cir. 2001). Recognizing, however, § 922(q)(2)(A)'s purpose of "protect[ing] school children from gun-related violence on or near schools," the exemption made for firearm possession on private property "must be construed narrowly." *United States v. Campbell*, 12 F.3d 147, 148 (8th Cir. 1994) (citing *Gun-Free School Zones Act of 1990: Hearing on HR 3537 Before the Subcomm. On Crime of the House Comm. On Judiciary*, 101st Cong., 1st Sess. 1 *et seq*. (1990)).

The residential sidewalk represents the "quintessential public sidewalk." *United States v. Kokinda*, 497 U.S. 720, 727–28, 110 S. Ct. 3115, 111 L. Ed. 2d 571 (1990). "Sidewalks of course are among those areas of *public property* that have traditionally been held open to the public . . . and are clearly within those areas of *public property* that may be considered, generally without further inquiry, to be public forum property." *United States v. Grace*, 461 U.S. 171, 179, 103 S. Ct. 1702, 75 L. Ed. 2d 736 (1983) (emphasis added). Indeed, the Seventh Circuit has identified "the sidewalk and the grass strip beyond the sidewalk" as "public property." *United States v. Kincaid*, 212 F.3d 1025, 1027 (7th Cir. 2000). More recently, the Seventh Circuit explicitly noted that a sidewalk, "like a park," is clearly a "public forum." *Smith v. Exec. Dir. of Ind. War Mem'ls. Comm'n*, 742 F.3d 282, 288 (7th Cir. 2014). Defendant, herself, "acknowledges that sidewalks are historically public property." (R. 75.) Accordingly, because a sidewalk is a public space, Count Two's charged conduct does not fall within the "private property" exception of § 922(q)(2)(B)(i).

Certain opinions that have tangentially addressed the applicability of the "private property" exception in § 922(q)(2)(B)(i) to sidewalks further support this conclusion. The Fifth Circuit, for example, has stated that, even with the "private property" exception, it would be "a federal offense to carry an unloaded firearm…*on a public sidewalk* in front of one's residence." *United States v. Lopez*, 2 F.3d 1342, 1346 n.4 (5th Cir. 1993), *rev'd on other grounds*, 514 U.S. 549 (1995) (emphasis added). Also addressing § 922(q)(2)(B)(i), the Eighth Circuit appeared to consider a sidewalk public property when it noted that a defendant stepped "*from* the sidewalk *onto* . . . private property." *Campbell*, 12 F.3d at 148 (emphasis added).

Accordingly, Count Two of the Indictment sufficiently alleges an offense. Defendant's motion to dismiss on the grounds that Count Two fails to state an offense is denied. To the extent Defendant challenges whether the sidewalk at issue was in a school zone, this is an issue of fact for the jury to decide at trial. *See Moore*, 563 F.3d at 586 (citing *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006)).

## II.     Section 922(q)(2)(A) Does Not Violate The Second Amendment

Defendant next moves to dismiss Count Two of the Indictment on the grounds that Section 922(q)(2)(A) imposes, on its face and as-applied, an unconstitutional restraint on the Second Amendment right to bear arms. (R. 69.) Specifically, Defendant alleges that a "blanket ban on [firearm] possession within 1,000 feet of a school zone" is overbroad and infringes on Defendant's Second Amendment right to possess a firearm. (*Id*.)

The Second Amendment provides "a well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. Recently, "the Supreme Court has ruled that the Second Amendment includes an individual right to keep and bear arms in the home for the purpose of self-defense."

*Horsley v. Trame*, 808 F.3d 1126, 1130 (7th Cir. 2015) (citing *District of Columbia v. Heller*, 554 U.S. 570, 635, 178 S. Ct. 2783, 171 L. Ed. 2d 637 (2008)). The "right secured by the Second Amendment is not unlimited," however, and the legislature has license to enact "statutory prohibitions on the possession of weapons by some persons." *Heller*, 554 U.S. at 626; *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010). Moreover, some prohibitions, including those in "sensitive places such as schools," are presumptively lawful. *Heller*, 554 U.S. at 626.

Courts evaluate a Second Amendment based challenge using a "two-step approach." *United States v. Williams*, 616 F.3d 685, 691 (7th Cir. 2010). The initial inquiry addresses the "scope" of the Second Amendment's protection and whether the regulated activity falls outside of this scope, "as understood at the relevant historical moment–1791 or 1868." *Ezell v. City of Chi.*, 651 F.3d 684, 702 (7th Cir. 2011). If the activity does not fall within the scope of the Second Amendment, then the "analysis can stop there" as the regulation is valid. *Id*. at 703. If, however, the "challenged conduct" falls within the scope of the Second Amendment, then a court must apply some level of scrutiny to determine the law's validity. *Williams*, 616 F.3d at 691.

> **A. Section 922(q)(2)(A) is Substantially Related to an Important Government Interest**

Section 922(q)(2)(A) provides that "it shall be unlawful for any individual to knowingly possess a firearm . . . at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C. § 922(q)(2)(A). A "school zone" includes anything "in, or on the grounds of a public, parochial, or private school" or anything "within a distance of 1,000 feet from the grounds of a public, parochial, or private school." 18 U.S.C. § 921(a)(25)(A), (B). Here, the Court need not address whether the prohibition of guns in school zones falls outside of the historical ambit of the Second Amendment, as § 922(q)(2)(A) passes constitutional muster

6

under the appropriate standard of review. *See Williams*, 616 F.3d at 691 (overlooking the question of scope where a regulation satisfied the appropriate level of scrutiny).

Although the Supreme Court in *Heller* did not direct lower courts to apply an express level of scrutiny when addressing Second Amendment based challenges, the Seventh Circuit has held that courts should apply some level of scrutiny even to those regulations identified in *Heller* as presumptively lawful. *Williams*, 616 F.3d 692. In the present case intermediate scrutiny is the appropriate level of scrutiny to apply to § 922(q)(2)(A). "If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." *Heller*, 554 U.S. at 628 n.27. As a result, "*Heller*'s reference to any standard of scrutiny means any *heightened* level of scrutiny" and not rational-basis scrutiny. *Ezell*, 651 F.3d at 701 (citations omitted). The Seventh Circuit has elaborated on the contours of this heightened standard of scrutiny indicating that to survive a Second Amendment based challenge "some form of strong showing" is required to demonstrate that the statute in question is "substantially related to an important governmental objective." *Skoien*, 614 F.3d at 641. The Seventh Circuit likens this "strong showing" standard to intermediate scrutiny and applies it as such. *Williams*, 616 F.3d at 692 (applying intermediate scrutiny to § 922(g)(1)); *Ezell*, 651 F.3d at 708 ("In *Skoien* we required a 'form of strong showing'–a/k/a 'intermediate scrutiny'–in a Second Amendment challenge."); *Friedman v. Highland Park, Ill.*, 784 F.3d 406, 419 (7th Cir. 2015); *United States v. Donovan*, 410 F. App'x 979, 981 (7th Cir. 2011) ("The panel determined that intermediate scrutiny was the appropriate standard to apply to the defendant's Second Amendment challenge to § 922(g)(9); *Baer v. Lynch*, 636 F. App'x 695, 698 (7th Cir. 2016) (discussing the application

of intermediate scrutiny in the context of § 922(g)). Accordingly, the Court will apply intermediate scrutiny to § 922(q)(2)(A) to determine whether it passes constitutional muster.

The government's reliance on *United States v. Lewis*, No. 2008-05, 2008 WL 5412013, at *2 (D.V.I. Dec. 24, 2008), in which a district court declined to apply any level of scrutiny to a Second Amendment challenge to § 922(q)(2)(A), is misplaced. The *Lewis* court reasoned that because *Heller* expressly approved of the prohibition of firearms in "sensitive places such as schools," a Second Amendment based challenged to § 922(q)(2)(A) is unambiguously foreclosed and there is no need to "decide…what level of scrutiny should apply to post-*Heller* challenges to § 922(q)(2)(A)." *Lewis*, 2008 WL 5412013, at *2 (citing *Heller*, 554 U.S. at 626). As noted earlier, however, this approach does not comport with Seventh Circuit's directive in *Williams*.

### 1. Preventing Harm to Children is an Important Government Interest

Under intermediate scrutiny a challenged statute must be "substantially related to the achievement of an important governmental objective" or interest. *Williams*, 616 F.3d at 692; *see, e.g., United States v. Windsor*, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013); *United States v. Virginia*, 518 U.S. 515, 524, 116 S. Ct. 2264, 135 L. Ed. 2d 735 (1996) (applying intermediate scrutiny to sex-based discrimination). The purpose of § 922(q)(2)(A) is to ensure the protection of children in school zones from injurious gun violence. *See Campbell*, 12 F.3d at 148. Here, "the government's stated interest, of preventing harm to children, is well-established as . . . an important governmental interest." *Hall v. Garcia*, No. C 10 03799 RS, 2011 WL 995933, at *5 (N.D. Cal. Mar. 17, 2011) (addressing the constitutionality of a California statute modeled on § 922(q)). Indeed, "[i]t is evident beyond need for elaboration" that the protection of minor-children is a compelling, and, as a result, important governmental interest. *New York v. Ferber*, 458 U.S. 747, 756-57, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982); *see also Friedman*, 784 F.3d at

419 ("public safety is an obvious compelling interest in this case"). Defendant admits as much in her brief. (R. 75).

### 2. Section 922(q)(2)(A) is Substantially Related to the Important Government Interest of Preventing Harm to Children

Next, § 922(q)(2)(A) must be "substantially related" to this government interest in protecting children. *Williams*, 616 F.3d at 692. While the Seventh Circuit has not ruled on a Second Amendment challenge to § 922(q)(2)(A), it has found other subsections of § 922 to be "substantially related" to important government interests. *Williams*, 616 F.3d at 692; *Skoien*, 614 F.3d at 641. In *Skoien*, for example, the Seventh Circuit found constitutional a statute prohibiting misdemeanants convicted of domestic violence from possessing firearms. *Skoien*, 614 F.3d at 641. Applying intermediate scrutiny, the *Skoien* court held that "logic and data establish[ed] a substantial relationship" between the statute and the important governmental objective of preventing gun violence. *Id*. To illustrate this relationship the Seventh Circuit relied on numerous studies analyzing the connection between gun use and domestic violence. *Id*.

In relation to § 922(q)(2)(A), scholarly findings and data evidence a substantial relationship between school zone firearm possession and harm to minors. One author, addressing the impact of the Supreme Court's decision in *United States v. Lopez* and § 922(q), noted that schools have become a central location for violence and that school violence is a preeminent concern in education. *See* Carl W. Chamberlain, *Johnny Can't Read 'Cause Jane's Got a Gun: The Effect of Guns in Schools, and Options After Lopez*, 8 CORNELL J. L. & PUB. POL'Y, 281, 282–83 (1999). Moreover, in the years leading up to the enactment of § 922(q)(2)(A), there were "increases in the juvenile murder arrest rate" which were "inextricably linked to firearms." Hattie Ruttenberg, *The Limited Promise of Public Health Methodologies to Prevent Youth Violence*, 103 YALE L.J. 1885, 1892 (1994). One survey conducted in the year

9

preceding the enactment of § 922(q)(2)(A)'s predecessor found that thirty-nine percent of responding urban school districts reported a shooting or knifing in their schools. *See* Elizabeth Shogren, *More Violence Seen in Schools than 5 Years Ago*, L.A. Times, Jan. 6, 1994, at 17 (citing a survey conducted by the National School Board Association). A recent study from the Department of Justice estimates that between 2007 and 2011 approximately 12,600 acts of nonfatal gun violence occurred in schools in the United States. MICHAEL PLANTY & JENNIFER L. TRUMAN, SPECIAL REPORT: FIREARM VIOLENCE, 1993-2001 at 8 (2013).

These findings effectively demonstrate that school zone gun violence continues to endanger minors across the nation. Consequently, the prohibition of guns in school zones can be classified as substantially related to the important governmental interest of protecting minors. This conclusion appears to comport with the Supreme Court's identification of school zone firearm prohibitions as presumptively lawful in *Heller*, considering that at the time the Court declared such prohibitions presumptively lawful, it "was certainly cognizant" of § 922(q)(2)(A) and the criminal penalties it imposed. *Hall*, 2011 WL 995933, at *4.

### B. Section 922(q)(2)(A) Does Not Impede On The Core Component of the Second Amendment

Section 922(q)(2)(A)'s compliance with the core rights guaranteed by the Second Amendment further supports its constitutionality. The "core component" of the Second Amendment, as identified in *Heller*, is the right to possess firearms for self-defense, notably in the home. *Ezell*, 651 F.3d at 689 (citing *Heller*, 554 U.S. at 592–95). In *Hall v. Garcia*, a district court determined that a California statute modeled on § 922(q)(2)(A) did not burden the core rights guaranteed by the Second Amendment and, consequently, was "substantially related to the objective of creating a safe zone around schools." *Hall*, 2011 WL 995933, at *4–5. Moreover, the Ninth Circuit found that a similar law, which banned firearms on county property,

including various "public, open spaces, did not 'meaningfully impede' the core of the Second Amendment. *Nordyke v. King*, 563 F.3d 439, 459 (9th Cir. 2009), *vacated on other grounds*, 611 F.3d 1015 (9th Cir. 2010).

Similarly, § 922(q)(2)(A) does not infringe upon the core component of the Second Amendment. Notably, § 922(q)(2)(A) "does not apply to the possession of a firearm . . . on private property not part of school grounds." 18 U.S.C. § 922(q)(2)(B)(i). This exception expressly preserves the rights of individuals to possess firearms in their homes for the purposes of self-defense. The statute also includes various other exceptions allowing for the continued possession of a firearm in a school zone under certain circumstances. *See* 18 U.S.C. § 922(q)(2)(B)(ii)-(vii). Taken together, these exceptions conscientiously restrict the reach of § 922(q)(2)(A) and preserve the core component of the Second Amendment.

        C.        **Other Support for the Constitutionality of Section 922(q)(2)(A)**

In addition, Supreme Court precedent in other areas supports the constitutionality of § 922(q)(2)(A). The Supreme Court has identified the First Amendment, for example, as an appropriate analogue for courts to consider when addressing the Second Amendment. *See Heller*, 554 U.S. at 582; *see also McDonald v. City of Chi.*, 561 U.S. 742, 759, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010). In *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, the Supreme Court noted that First Amendment rights on school premises must be "applied in light of the special characteristics of the school environment." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969). Following the *Tinker* framework, the Supreme Court recently permitted a school principal to restrict the celebration of illicit drug use at a school event in an attempt to protect the student body. *Morse v. Frederick*, 551 U.S. 393, 403–408, 127 S. Ct. 2618, 168 L. Ed. 2d 290 (2007). These holdings highlight the unique

treatment reserved for school zones and the heightened protection afforded to them, even in the face of constitutional rights.

Additionally, in *City of Renton v. Playtime Theatres, Inc.*, the Supreme Court addressed an ordinance prohibiting adult motion picture theatres within 1,000 feet of a school. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986). Noting the deleterious effects of adult theatres on children and communities, the Supreme Court found this prohibition to be a constitutional restriction of First Amendment rights. *Id.* at 51. The holding in *City of Renton* suggests, therefore, that a prohibition of firearms within 1,000 feet of a school is similarly constitutional.

For the reasons explained above 18 U.S.C. § 922(q)(2)(A) is substantially related to an important government interest, and, thus, constitutional.

## III. Section 922(q)(2)(A) is Constitutional Under the Commerce Clause

Defendant also moves to dismiss Count Two of the Indictment on the grounds that 18 U.S.C. § 922(q)(2)(A) is an unconstitutional extension of Congress's regulatory authority under the Commerce Clause. (R. 69.) Defendant contends that her possession of a firearm near a school did not have a substantial effect on interstate commerce and, therefore, is not an activity that is constitutionally subject to federal regulation. (*Id.*) The Court disagrees.

The Constitution grants Congress the authority "to regulate commerce with Foreign Nations, among the several States, and with the Indian tribes." U.S. CONST. art. 1, § 8, cl. 3. The Supreme Court has restricted this power, dictating that Congress may only regulate activity falling within "three broad categories," which include channels of interstate commerce, instrumentalities of interstate commerce, and "those activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 557–58, 115 S. Ct. 1624, 131 L. Ed. 2d 626

(1995). Moreover, the activity regulated under the Commerce Clause must be economic in nature and its connection with "a substantial effect on interstate commerce" must not be "attenuated." *United States v. Morrison*, 529 U.S. 598, 610–12, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000). When evaluating an application of this power, a court "need only ask whether Congress could have a rational basis to support" the law in question and "whether the regulatory means chosen were reasonably adapted to the end permitted by the Constitution." *United States v. Vazquez*, 611 F.3d 325, 329 (7th Cir. 2010). A court should, however, "invalidate congressional enactments . . . upon a plain showing that Congress has exceeded its constitutional bounds." *Morrison*, 529 U.S. at 607.

In *Lopez*, the Supreme Court found the prior version of 18 U.S.C. § 922(q)(2)(A) unconstitutional because it neither regulated commercial activity nor required any connection between the possession of the firearm and interstate commerce. *See Lopez*, 514 U.S. at 549. This version of § 922(q)(2)(A) made it a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reason to believe, is a school zone." *Id*. at 551. The Court held that this statute was "a criminal statute . . . that ha[d] nothing to do with commerce or any sort of economic enterprise, however broadly one might define those terms." *Id*. at 561. Notably, the statute possessed "no jurisdictional element" which would "ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id*.

Shortly after *Lopez*, Congress amended § 922(q)(2)(A) in response to the constitutional defects identified by the Supreme Court. The amended § 922(q)(2)(A) now includes a clear jurisdictional element. *See United States v. Wilson*, 159 F.3d 280, 286 (7th Cir. 1998). Specifically, § 922(q)(2)(A) now reads:

13

> It shall be unlawful for any individual knowingly to possess a firearm *that has moved in or that otherwise affects interstate or foreign commerce* at a place that the individual knows, or has reasonable cause to believe, is a school zone.

18 U.S.C. § 922(q)(2)(A) (emphasis added).

The question, therefore, "is whether the addition of the jurisdictional element" in § 922(q)(2)(A) repairs the constitutional shortfalls announced in *Lopez*. *United States v. Dorsey*, 418 F.3d 1038, 1045 (9th Cir. 2005). While the Seventh Circuit has not addressed this question, both the Eighth and Ninth Circuits have answered in the affirmative. *Id*. at 1046; *United States. v. Danks*, 221 F.3d 1037, 1039 (8th Cir. 1999). The Eighth Circuit held that a jurisdictional element makes § 922(q)(2)(A) "a constitutional exercise of Congress's Commerce Clause power" because it ensures on a case-by-case basis that the firearm in question affects interstate commerce. *Danks*, 221 F.3d at 1039. Similarly, the Ninth Circuit found that the amended § 922(q)(2)(A) complies with constitutional requirements, as it ensures that the activity it regulates has "a concrete tie with interstate commerce." *Dorsey*, 418 F.3d at 1046 (citing *Lopez*, 514 U.S. at 567). In reaching this conclusion, both courts heavily "relied upon § 922(g)" noting that its analogous jurisdictional element "insures . . . that a defendant's actions implicate interstate commerce to a constitutionally adequate degree." *Dorsey*, 418 F.3d at 1046; *see also Danks*, 221 F.3d at 1038–39; *United States v. McKinley*, No. 14-15619, — Fed. App'x —, 2016 WL 1425917, at *3 (11th Cir. Apr. 12, 2016)("Based on *Lopez,* we've held that the express jurisdictional elements of a number of statutes defeated facial challenges to their constitutionality").

Significantly, the Seventh Circuit has consistently affirmed the constitutionality of § 922(g) under the Commerce Clause. *See United States v. Lewis*, 128 F.3d 1128, 1133 (7th Cir. 1997) (collecting cases); *see also United States v. Diaz*, 202 F. App'x 558, 559 (7th Cir. 2006).

In *United States v. Bell*, for example, the Seventh Circuit held that a jurisdictional element requiring the government "to prove [that] the weapon" in question "traveled in interstate commerce," preserves the constitutionality of 18 U.S.C. § 922(g)(1). *United States v. Bell*, 70 F.3d 495, 498 (7th Cir. 1995). The Seventh Circuit further explained that, "because subsection (g) contains its own provision that the possession [of a firearm] must be in or affecting interstate commerce," § 922(g)(1) is valid under the Commerce Clause. *United States v. Williams*, 128 F.3d 1128, 1133 (7th Cir. 1997) (citations omitted). In sum, the presence of a jurisdictional element remedies precisely the flaws identified in the original § 922(q) in *Lopez*. *See Wilson*, 159 F.3d at 286.

The Seventh Circuit cases involving § 922(g) rely on the Supreme Court's decision in *Scarborough v. United States*, 431 U.S. 563, 575, 97 S. Ct. 1963, 52 L. Ed. 2d 582 (1977), to justify the use of a jurisdictional element to preserve the statute's constitutionality. *See Bell*, 70 F.3d at 497–98. In *Scarborough*, the Supreme Court found that regulation of a firearm under the Commerce Clause required "no more than the minimal nexus that the firearm have been, at some time, in interstate commerce." *Scarborough*, 431 U.S. at 575. This requirement would include a simple showing that a firearm, at any time, moved "across [a] state line." *Id*. at 566.

The Seventh Circuit has expressly held "that *Lopez* cast no doubt on the validity" of the *Scarborough* decision. *United States v. Lewis*, 100 F.3d 49, 52 (7th Cir. 1996). Consequently, the Seventh Circuit has consistently held that, in accordance with *Scarborough*, a jurisdictional element ensures the constitutionality of § 922(g) because it requires a regulated firearm to have made at least "a single journey across state lines," which is "enough to establish [a] constitutionally minimum tie between a given weapon and interstate commerce." *Id*.; *see also Wilson*, 159 F.3d at 286–87. In fact, the Ninth Circuit, utilized similar reasoning and expressly

relied upon the *Scarborough* decision when affirming the constitutionality of § 922(q)(2)(A). *See Dorsey*, 418 F.3d at 1045. In accordance with *Scarborough* and Seventh Circuit law addressing § 922(g), the addition of a jurisdictional element to § 922(q)(2)(A) brings the statute within the ambit of the Commerce Clause. As a result, the Court denies Defendant's motion to dismiss Count Two of the Indictment on the grounds that § 922(q)(2)(A) is unconstitutional under the Commerce Clause.

**IV.     Section 922(q) is Not Unconstitutionally Vague**

Defendant seeks to dismiss Count Two of the Indictment on the grounds that § 922(q) is unconstitutionally vague, as it does not provide adequate notice. (R. 75.) Section 922(q)(2)(A) dictates that "it shall be unlawful for any individual knowingly to possess a firearm that has moved in or otherwise affects interstate commerce at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C. § 922(q)(2)(A). A "school zone" comprises anything "in, or on the grounds of a public, parochial, or private school " or anything "within a distance of 1,000 feet from the grounds of a public, parochial, or private school." 18 U.S.C. § 921(a)(25)(A), (B). This prohibition does not apply to certain forms of excepted conduct, including "the possession of a firearm…on private property not part of school grounds." 18 U.S.C. § 922(q)(2)(B)(i). Contrary to Defendant's suggestion, *Lopez* did not invalidate this statutory definition, as *Lopez* did not address statutory vagueness, but rather the validity of § 922(q) under the Commerce Clause. *See Lopez*, 514 U.S. at 567–68.

Pursuant to the Due Process clause of the Fifth Amendment, the government may not impose a sanction under a criminal law that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556, 192 L. Ed. 2d 569 (2015). A statute must

16

provide fair notice of the proscribed conduct to avoid unconstitutional vagueness. *See United States v. Sylla*, 790 F.3d 772, 774 (7th Cir. 2015). Additionally, "a law must have a reasonable degree of clarity such that anyone of ordinary intelligence can grasp its import." *Weinberg v. City of Chi.*, 310 F.3d 1029, 1042 (7th Cir. 2002) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 629, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984)).

Defendant's contention that § 922(q) is unconstitutionally vague is unfounded. Defendant ostensibly targets § 922(q)(2)(B)(i), arguing that it is unclear whether "private property" comprises sidewalks. (R. 84.) First, as set forth above, federal case law clearly identifies sidewalks as "public property." *Kincaid*, 212 F.3d at 1027; *see also Grace*, 461 U.S. at 179. Moreover, "a statute need not define every term to survive a vagueness challenge." *Brown v. Chi. Bd. of Educ.*, No. 15 1857, 2016 WL 3094438, at *3 (7th Cir. June 2, 2016). In *Weinberg*, for example, the Seventh Circuit rejected a vagueness challenge to a statute using the term "newspaper." *Weinberg*, 310 F.3d at 1042. There, the court reasoned that because such a term had a "readily ascertainable meaning," "someone of common intelligence" could understand its use in a statute. *Id*. Similarly, the meaning of "private property" is sufficiently clear and readily ascertainable to a person of common intelligence, particularly in relation to traditionally public spaces like sidewalks. *See Kincaid*, 212 F.3d at 1027; *see also Grace*, 461 U.S. at 179.

Relatedly, § 922(q)(2)(A) adequately puts Defendant on notice. A statute provides fair notice when it ensures that "a person of ordinary intelligence" is aware of the conduct that "is prohibited." *United States v. Williams*, 553 U.S. 285, 304, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008). In *United States v. Wilson*, for example, the Seventh Circuit determined that § 922(g)(8) provided adequate notice given the statute's explicit delineation of "the class of affected

individuals" and "the conduct sought to be regulated." *Wilson*, 159 F.3d at 288. Section 922(q)(2)(A), similarly, provides explicit definitions of the conduct that it regulates and the persons it affects. A plain reading of § 922(q)(2)(A) makes clear that the possession of a firearm in or near a school zone by any individual is a federal offense. 18 U.S.C. § 922(q)(2)(A). Moreover, Congress has expressly defined the term "school zone," indicating that it comprises anything on or "1,000 feet from the grounds of a public, private, or parochial school." 18 U.S.C. § 921(a)(25)(A), (B). Addressing an analogous vagueness challenge to § 922(q), the First Circuit ruled accordingly and held that the "clear terms of…[§ 922(q)]" adequately put a defendant on notice. *United States v. Nieves-Castano*, 480 F.3d 597, 603 (1st Cir. 2007) (indicating that the scienter requirement of 1,000 feet ameliorates any vagueness concerns).

Section 922(q) provides adequate notice and, therefore, Defendant's argument that § 922(q) is unconstitutionally vague fails.

## CONCLUSION

For the reasons provided above, the Court denies Defendant's motion to dismiss Count Two of the Indictment.

**Dated: August 18, 2016**

**AMY J. ST. EVE**
**United States District Court Judge**