IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 16 CR 80 |
| v. | ) | |
| | ) | Hon. Amy J. St. Eve |
| VANDETTA REDWOOD | ) | |

# MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On October 6, 2016, the Government moved to exclude Defendant Vandetta Redwood's ("Defendant") proposed expert in perception and human memory, Dr. Ken Paller, pursuant to the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). (R. 153.) For the following reasons, the Court, in its discretion, grants the government's motion. The Court therefore declines to appoint an expert under the Criminal Justice Act, as Defendant requests, (R. 146), because Defendant has failed to establish that Dr. Paller's testimony is "necessary for adequate representation." 18 U.S.C. § 3006A(e); *see United States v. Carter*, 410 F.3d 942, 949–51 (7th Cir. 2005).

## BACKGROUND

### I. The Charges Against Redwood

On February 10, 2016, a grand jury returned a two-count indictment against Defendant. (R. 1.) Count One charges Defendant with transferring a handgun and ammunition, namely, a loaded Smith & Wesson, Model 642 Airweight, .38 special caliber revolver, bearing serial number CRZ6547, to Minor D.P., knowing and having reasonable cause to believe that Minor D.P. was a juvenile, in that she had not attained eighteen years of age, and knowing and having reasonable cause to believe that Minor D.P. intended to carry and otherwise possess and

discharge and otherwise use the handgun and ammunition in the commission of a crime of violence, namely first degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm, in violation of 18 U.S.C. §§ 922(x)(1)(A), (B) and 924(a)(6)(B)(ii). (*Id.*) Count Two charges Defendant with knowingly possessing in and affecting interstate commerce a firearm, namely, the same handgun identified above in Count One, which had traveled in interstate commerce prior to Defendant's possession of the firearm, within a distance of 1,000 feet of the grounds of Oliver Wendell Holmes Elementary School and Visitation Catholic School, a place that Defendant knew and had reasonable cause to believe was a school zone, in violation of 18 U.S.C. §§ 924(q)(2)(A) and 924(a)(4). (*Id.*)

The charges against Defendant are premised on events that took place on April 28, 2014, during a fight among high school students. Defendant is charged with giving D.P., her then 14-year old cousin, a loaded firearm and telling her to shoot another 14-year old girl. D.P. then used the firearm to shoot two teenage girls, killing one of them.

## II. The Proffered Expert Testimony

On September 23, 2016—the deadline for expert disclosures, (R. 131)—Defendant provided notice to the government of her intent to call Dr. Geoffrey Loftus as an expert witness. (R. 153-1 at 1.) Defendant explained that Dr. Loftus would "testify to the vagaries of eyewitness identification under the specific circumstances of this case." (*Id.*) Specifically, Defendant indicated that Dr. Loftus would testify about the following issues: (1) "that [a] witness's level of confidence does not necessarily correlate to the accuracy of the eyewitness identification"; and (2) "that numerous factors can undermine the accuracy of an eyewitness's recall of series of events or identifications, including" (a) "the stress of the event itself," (b) "the presence of a weapon," (c) "the passage of time," (d) "the 'forgetting curve,'" (e) "exposure to post-event

2

information," (f) "divided attention of the witness," and (g) "suggestive police identification procedures." (*Id.* at 2.) Defendant highlighted that Dr. Loftus would testify regarding how "the slow-motion crime scene video"[1] supposedly altered witnesses' memories of the events leading up to the shooting. Additionally, Defendant indicated that Dr. Loftus would testify "to the problem of eyewitness recollection, which affects the ability to correctly identify a face, product, figure, or sequence of events," as well as "'poor encoding' or how a witness's brain initially perceives an event which may include challenging the eyewitness's visibility, attentiveness, focus and perception at the time an event occurred and that perception is affected by known, scientifically documented tricks that the mind plays on a witness." (*Id.*)

On September 26, 2016, Defendant told the government that Dr. Loftus was unavailable to testify at trial and that a second expert, Dr. Paller, would replace him. (R. 153 at 1.) Then, on September 30, 2016, Defendant provided an expert disclosure summarizing Dr. Paller's testimony. (R. 153-1 at 3–4.) Relevantly, Defendant said:

> To start, a confident eyewitness testimony may not always be accurate, and confidence in one's report can be dissociated from accuracy of report. Furthermore, accuracy can be compromised through action at many stages from initial learning until later recall. Initial learning may be more difficult when distracting events and emotional factors are operative concurrently. Information we acquire at one time can be altered based on subsequent events. Additional information available after initial learning, including specific forms of questioning or misleading information, can corrupt memory storage in the brain. In this sense, memory storage in the brain is quite unlike recording by a video camera.

(*Id.* at 3.)

In a September 29, 2016 motion for expert assistance under the Criminal Justice Act, which Defendant amended the following day, Defendant represented that Dr. Paller's testimony

---

[1] The government plans to introduce a cell phone video, which the Court has viewed, that shows Defendant at the scene of the crime before the shooting.

3

would provide context for and cast doubt upon the testimony of eyewitnesses who initially reported that they saw "the gun being passed between two minors" but later changed their accounts after seeing the slow motion cell phone video. (R. 140 at 2–3; R. 146 at 2–3.)

Finally, on October 4, 2016, Defendant provided a third disclosure. (R. 153-1 at 5.) It stated:

> This is not the typical eye witness expert testimony dealing with eye witness identifications. Instead, the facts of this case demonstrate the need to explain to the jury how memories are formed and how they can be distorted by after-event information such as viewing the slow motion video, discussing the events with others, exposure to after-event details through social media and/or other media coverage, interviews with law enforcement, prior testimony and other intervening events and how this post-event information gets melded with one's actual memory. Further how one's perception and life events can distort a memory and how false memories can be formed. Additionally, how memory and perception are effected [sic] by traumatic events, such as seeing someone get killed or seeing a weapon as well as the circumstances surrounding the event itself including the length of time and the focus of one's attention during the event. The cases cited by the Court deal with more traditional eye witness identifications and reliability, however the expected testimony in this case far exceeds the reliability of eye witness identifications.

(*Id.*)

## LEGAL STANDARDS

"Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993), govern the admission of expert testimony in federal courts." *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). "The rubric for evaluating the admissibility of expert evidence considers whether the expert was qualified, whether his methodology was scientifically reliable, and whether the testimony would have assisted the trier of fact in understanding the evidence or in determining the fact in issue." *Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 817 (7th Cir. 2014); *see also Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th

4

Cir. 2015) ("Rule 702 and *Daubert* require the district court to determine whether proposed expert testimony is both relevant and reliable."). Although the Seventh Circuit reviews "the district court's application of *Daubert* [] de novo," if "the court adhered to the *Daubert* framework, then its decision on admissibility is reviewed for abuse of discretion." *Estate of Stuller v. United States*, 811 F.3d 890, 895 (7th Cir. 2016).

A district court's evaluation of expert testimony under *Daubert* does not "take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012); *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013) ("[T]he district court's role as gatekeeper does not render the district court the trier of all facts relating to expert testimony"). Once it is determined that "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley*, 689 F.3d at 805 (quoting *Daubert*, 509 U.S. at 596). A district court's inquiry under *Daubert* is a flexible one and district courts have wide latitude in performing this gate-keeping function. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Hartman*, 758 F.3d at 818. "'[T]he key to the gate is not the ultimate correctness of the expert's conclusions,'" rather, "'it is the soundness and care with which the expert arrived at her opinion[.]'" *Wood*, 807 F.3d at 834 (citation omitted). The "proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Even if evidence is otherwise admissible under Rule 702 and *Daubert*, the Court may exclude it under Federal Rule of Evidence 403. "Rule 403 permits a district court to 'exclude

5

relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) (alteration in original) (quoting Fed. R. Evid. 403). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.

## ANALYSIS

One of the requirements of expert testimony under *Daubert* and Rule 702 is that it "assist the trier of fact to understand the evidence or to determine a fact at issue," which "goes primarily to relevance." *Daubert*, 509 U.S. at 591. The government contends that "Redwood has proffered testimony about three general topics: the reliability of a witness's identification of a person, the reliability of a witness's initial perception of an event, and the reliability of a witness's memory of an event." (R. 153 at 5.) The government argues that "none of these is the proper subject of expert testimony." (*Id.*) Before the Court considers the government's contentions, however, it is helpful to review the Seventh Circuit's treatment of expert testimony regarding witness perception and memory.

**I.    Expert testimony regarding witness perception and memory**

"An expert . . . must testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury." *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) (alteration in original) (quoting *Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998)); *see also Taylor v. Ill. Cent. R.R. Co.*, 8 F.3d 584, 585–86 (7th Cir. 1993) (affirming the exclusion of expert testimony where "any lay juror could understand th[e] issue

without the assistance of expert testimony"); *In re Ingram Barge Co.*, No. 13 C 3453, 2016 WL 3763450, at *10 (N.D. Ill. July 14, 2016) ("Expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony." (quoting *Sullivan v. Alcatel-Lucent USA Inc.*, No. 12 C 7528, 2014 WL 3558690, at *6 (July 17, 2014))). Moreover, if jury instructions and cross-examination allow the jury to sufficiently evaluate an eyewitness's testimony, expert testimony about memory and perception may well be unhelpful and potentially confusing. *See Carter*, 410 F.3d at 950–51; *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999).

The Seventh Circuit has historically disfavored expert testimony regarding eyewitness perception and memory. *See Hall*, 165 F.3d at 1107. Defendant does not appear to dispute this disfavor, instead arguing that the Seventh Circuit's position is not absolute and that it is out of step with modern understandings of witness perception and memory. (R. 167 at 2–8.)

Turning to the relevant case law, the Seventh Circuit has said that "[w]hether expert testimony regarding witness perception, memory, reliability, and deception could assist a properly-instructed jury in its task of evaluating trial testimony is controversial." *Jimenez v. City of Chicago*, 732 F.3d 710, 722 (7th Cir. 2013). In *United States v. Hall*, the Seventh Circuit affirmed a district court's denial of expert testimony regarding the reliability of eyewitness identification, noting that there is "a long line of cases which reflect [its] disfavor of expert testimony on the reliability of eyewitness identification." 165 F.3d at 1104–06. The *Hall* court cited *United States v. Curry*, where the Seventh Circuit affirmed the exclusion of testimony that, among other issues, (1) "a witness' confidence in his identification bears little or no relationship to the accuracy of that identification"; (2) "memory fades at a geometric rather than arithmetic

7

rate"; and (3) "post-event phenomena may affect original memory, and memory is easily distorted by leading question or other manipulation." *Id.* at 1104 (citing *United States v. Curry*, 977 F.2d 1042, 1051–52 (7th Cir. 1992)). The *Hall* court also pointed to *United States v. Hudson*, where the court affirmed the exclusion of expert testimony regarding "the effect of stress on eyewitness identification" and providing "an overview of the memory process." *Id.* (citing *United States v. Hudson*, 884 F.2d 1016, 1023–24 (7th Cir. 1989)); *see also United States v. Larkin*, 978 F.2d 964, 971 (7th Cir. 1992) (affirming the exclusion of testimony regarding the "undependability of eyewitness identification under stressful circumstances").

In *United States v. Carter*, 410 F.3d 942, 949–51 (7th Cir. 2005), the Seventh Circuit concluded that a district court did not abuse its discretion in excluding expert testimony regarding "factors that could affect memory, including the circumstances surrounding the event in question, the amount of stress on the eyewitness, the amount of attention paid by the witness, and the law enforcement procedures used to elicit the witness's memory." In reaching this conclusion, the court relied on *Hall* and the many cases like it in which the Seventh Circuit affirmed the exclusion of expert testimony regarding the reliability of eyewitness testimony. *See Carter*, 410 F.3d at 950. The *Carter* court also explained that additional factors bolstered the district court's decision to exclude the expert testimony, namely, the defendant's ability to cross-examine witnesses regarding their perception, additional evidence corroborating the relevant eyewitness testimony, and the district court's jury instructions regarding the risks of eyewitness identifications.[2] *Id.* The court noted, however, that expert testimony regarding eyewitness perception and memory is not per se inadmissible. *Id.*

---

[2] The *Carter* court highlighted one instruction in particular regarding eyewitness testimony that is substantially similar to Pattern Instruction 3.12, which the Court will give in this case. *Carter*, 410 F.3d at 951 n.2; *see* Pattern Criminal Jury Instructions of the Seventh Circuit 3.12 at 29 (2012).

In *United States v. Bartlett*, however, the Seventh Circuit noted:

> It will not do to reply that jurors know from their daily lives that memory is fallible. The question that social science can address is *how* fallible, and thus how deeply any given identification should be discounted. That jurors have beliefs about this does not make expert evidence irrelevant; to the contrary, it may make such evidence vital, for if jurors' beliefs are mistaken then they may reach incorrect conclusions. Expert evidence can help jurors evaluate whether their beliefs about the reliability of eyewitness testimony are correct. Many people believe that identifications expressed with certainty are more likely to be correct; evidence that there is no relation between certitude and accuracy may have a powerful effect.

567 F.3d 901, 906 (7th Cir. 2009) (emphasis in original). The court, however, did not overrule *Hall*, *Carter*, and the other cases mentioned above. Indeed, the Seventh Circuit subsequently noted the "controversial" nature of such testimony. *See Jimenez*, 732 F.3d at 722 (citing *Hall*, 165 F.3d at 1107; *Hall*, 165 F.3d at 1118 (Easterbrook, J., concurring)). Moreover, the *Bartlett* court went on to note that judges "must balance the benefits of illuminating evidence against the costs of collateral inquiries." *Bartlett*, 567 F.3d at 906. "That's why," the court reasoned, "Rule 403 grants discretion to the trial judge—and why we have held, many times, that a trial court does not abuse its discretion by excluding expert evidence about the reliability of eyewitness testimony." *Id.*

Proceeding under Rule 403, the court concluded that the district court did not abuse its discretion in excluding the defendant's expert identification witness. *Id.* The court highlighted the fact that multiple witnesses identified the defendant and noted that "the scholarly findings about eyewitnesses have only limited application when multiple witnesses identify the same person." *Id.* at 907.

Defendant cites a number of other cases for the proposition that social science studies can help correct common misconceptions regarding eyewitness identification, most notably, *United*

9

*States v. Williams*, 522 F.3d 809 (7th Cir. 2008); *Newsome v. McCabe*, 319 F.3d 301, 306 (7th Cir. 2003); and *Phillips v. Allen*, 668 F.3d 912 (7th Cir. 2012). These cases are not entirely on point, however, because they focus on identification through police lineups. In addition, *Newsome* and *Phillips* are civil cases. *See Phillips*, 668 F.3d at 913; *Williams*, 522 F.3d at 810; *Newsome*, 319 F.3d at 302–03, 305, 306 (noting that "it may be prudent to avoid complicating criminal trials with general scientific evidence about the psychology of identification"). Here, as discussed below, there is no dispute that Defendant was present at the scene of the crime within the vicinity of D.P. The cell phone video confirms her presence. Thus, this case does not present the same concern regarding a potential false identification as in *Phillips*, *Williams*, and *Newsome*. Furthermore, multiple witnesses will testify as to Defendant's presence at the scene. *Blackmon v. Williams*, 823 F.3d 1088, 1101 (7th Cir. 2016) (explaining that findings regarding the rate of error in eyewitness identification of strangers "have only limited application when multiple witnesses identify the same person." (quoting *Bartlett*, 567 F.3d at 907)); *see also id.* ("Each witness's identification of Morales as the shooter corroborated the other's testimony." (quoting *Morales v. Johnson*, 659 F.3d 588, 601 (7th Cir. 2011))); *id.* at 1101–02 ("[T]he number of identifications supplies valuable information. Even if the risk that any one identification would be mistaken is substantial, the risk that multiple witnesses would make the same error is smaller." (alteration in original) (quoting *Williams*, 522 F.3d at 812)). Additionally, this case is, of course, a criminal matter, unlike *Newsome* and *Phillips*. Finally, *Hall* and *Carter* both recognize that this testimony is disfavored.

II. **The Court excludes Dr. Paller's testimony under Rule 702/*Daubert* and Rule 403**

Redwood seeks the admission of Dr. Paller's expert testimony regarding three general topics: (1) the reliability of a witness's identification of a person, (2) the reliability of a witness's

initial perception of an event, and (3) the reliability of a witness's memory of an event." None of this testimony is admissible.

With respect to the first topic, the government argues that "Redwood's identity and presence at the fight" will not be in dispute at trial, especially given that the video is "of sufficient quality to identify Redwood" and that "a family member of the same race who saw Redwood multiple times per week and who has known her for twenty years" will identify her in the video. (*Id.* at 6.) As noted above, multiple other witnesses will testify as to her presence as well. Defendant does not appear to disagree. She says "[a]t issue is not whether Ms. Redwood is observed on the video or was present at the scene—at issue is whether [certain] witnesses observed her possess or transfer a firearm." (R. 167 at 3.) Dr. Paller's testimony regarding the reliability of a witness's identification will therefore not assist the jury. *See Blackmon*, 823 F.3d at 1101–02; *Bartlett*, 567 F.3d at 907. Consequently, the Court considers the propriety of Dr. Paller's testimony with respect to only the reliability of a witness's initial perception of an event (*i.e.*, whether a witness accurately perceived Defendant pass a gun to D.P.) and the reliability of a witness's memory (*i.e.*, whether a witness's memory of the shooting incident is accurate).

The Court, in its discretion, finds the expert testimony regarding the remaining two topics inadmissible in this case under Rule 702 and *Daubert* as well as Rule 403. First, with respect to the reliability of a witness's initial perception of an event, the Court agrees that "every juror will already know that a witness's ability to perceive something could be affected by whether and for how long the witness could see or hear it, and whether the witness was focused or distracted." (R. 153 at 7.) It is within jurors' experience to know that a witness's perception may not be accurate at a rapidly escalating confrontation involving many people. *See Carter*, 410 F.3d at 950; *Hall*, 165 F.3d at 1104–05. Defendant is therefore free to use cross-examination and

11

argument to make clear what witnesses observed, what distractions were present, and how those distractions affected the witnesses. Moreover, the Court will give a jury instruction regarding the risks of eyewitness identification, further decreasing the helpfulness of Dr. Paller's testimony. *See Carter*, 410 F.3d at 950–51. In this case, cross-examination, argument, and jury instructions are sufficient; Defendant's proposed expert testimony regarding initial witness perception will not assist the trier of fact. *See id.* Additionally, allowing Defendant's proposed expert testimony will consume trial time far out of proportion to its value, inviting a battle of the experts to opine on issues that lay jurors can understand and potentially causing confusion.

Second, Defendant's proposed testimony regarding memory is similarly inadmissible in this case under Rules 702 and 403. In *Hall*, the court highlighted how the Seventh Circuit had previously affirmed the exclusion of evidence (1) regarding the relationship between witness confidence and accuracy, (2) that memory fades over time, and (3) that later events can alter memories. *Hall*, 165 F.3d at 1104. In *Carter*, the court similarly affirmed the exclusion of evidence regarding the effect of law enforcement procedures used to elicit the witness's memory. 410 F.3d at 949–51. In this case, the Court finds it prudent to follow the path forged in those cases. Again, Defendant may effectively use argument and cross-examination to highlight witnesses' inconsistent statements and changes in their memory, what witnesses heard about the events in question and if anything they heard changed their minds about what transpired, and whether they saw the cell phone video and if it changed their minds. Additionally, the jurors will have the opportunity to hear witness testimony and see the cell phone video in both regular speed and slow motion. Using this information, jurors can use their judgment and experience to weigh the credibility of each witness's testimony—just as jurors are instructed. General expert testimony regarding witness memory will not be helpful, will needlessly prolong the trial, and

will create too high a risk of juror confusion. *See id.* at 950 (affirming a district court that found that expert testimony regarding eyewitness identification "might actually confuse, mislead, or unduly influence the jury"); *Newsome*, 319 F.3d at 306 (noting that "it may be prudent to avoid complicating criminal trials with general scientific evidence about the psychology of identification"); *United States v. Libby*, 461 F. Supp. 2d. 3, 18 (D.D.C. 2006).

In *Libby*, for example, the court explained:

> "[A]s already discussed, it is reasonable to assume that the jurors selected in this case already have an understanding of the principles [regarding human memory] about which Dr. Bjork would testify. And, if by chance that is not the case for some of the jurors, there is no reason to believe that by the time the jury commences its deliberations (or during the course of deliberations) the entire jury panel will not appreciate the frailties of memory, and properly factor this into their evaluation of the evidence. Therefore, the probative value of Dr. Bjork's testimony is limited to merely drawing more attention to those principles about which the jury will already have an appreciation. Accordingly, the probative value of the testimony is substantially outweighed by considerations of undue delay and waste of time.

461 F. Supp. 2d at 18. The court added that allowing the expert testimony "'may cause jur[ors] to surrender their own common sense in weighing [the] testimony,' and instead cause them to rely too heavily upon [the expert's] testimony." *Id.* (alterations in original) (citation omitted) (quoting *Bastow v. Gen. Motors Corp.*, 844 F.2d 506, 510–11 (8th Cir. 1988)). This, the *Libby* court concluded, could "confuse" the jury's ability to "assess the credibility and veracity of the witnesses." *Id.* The Court finds the *Libby* court's analysis applicable and persuasive based on the allegations and facts in this case.

Other considerations reinforce the Court's conclusion. First, the fact that multiple witnesses[3] identified Defendant as having passed a firearm to D.P. bolsters the case for excluding

---

[3] The Court asked the government to identify how many witnesses will testify that they saw Defendant pass a firearm to D.P. The government responded that it "may call [four] witnesses on this topic." (R. 174.) Two will

13

Dr. Paller's testimony. *See Bartlett*, 567 F.3d at 906–07 ("We have remarked before that the scholarly findings about eyewitnesses have only limited application when multiple witnesses identify the same person."). Second, apart from multiple witnesses testifying to having seen Defendant pass the firearm, other evidence corroborates the witnesses' testimony by independently supporting the government's case against Defendant. *See Carter*, 410 F.3d at 950–51 (explaining that additional evidence corroborating a witness identification "bolstered" the district court's decision to exclude expert testimony). In particular, the government will present the cell phone video depicting many of the events on the day in question, evidence that Redwood told D.P. to "shoot the bitch," and evidence that Defendant lied to the police after the shooting by denying she was present at the scene.

A practical matter further supports the Court's conclusion. This case involves rather unremarkable testimony. Individuals witnessed an event, heard people talk about the event, and some of them may have refreshed their memories by watching a video of the event. To allow expert testimony in cases like this would perpetuate expert-testimony mini-trials within a great many criminal trials, as witnesses to crimes often engage in conversation about what they saw and review relevant videos or photos. Indeed, if the Court accepts Defendant's argument, it would be difficult to justify excluding expert testimony on memory and perception in any case in which eyewitnesses testify about an event they perceived and later discussed. While in unique circumstances expert testimony regarding memory and perception may be warranted, this is not one of those cases. *See Carter*, 410 F.3d at 950 (explaining that the district court did not abuse

---

testify that they saw Defendant pass an object that they believe was a gun to D.P. (*Id.*) One will testify that it appeared Defendant gave something to D.P. shortly before the shooting and that D.P. gave a shiny object to Defendant. (*Id.*) The final witness will say that she saw Defendant walk toward D.P. while reaching into her jacket, that Defendant and D.P. came together, and that within seconds, D.P. "had a gun in her hand that was not previously in her hand." (*Id.*)

its discretion by denying a memory expert, as the case did not present an unusual situation where such an expert was necessary); *Newsome*, 319 F.3d at 306 ("[I]t may be prudent to avoid complicating criminal trials with general scientific evidence about the psychology of identification."); *Libby*, 461 F. Supp. 2d at 18.

Defendant's counterarguments are unconvincing. First, Defendant wishes to cast aside *Hall* (and, presumably, *Carter*, *Curry*, *Hudson*, and *Larkin*, among other cases) by contending that *Hall* is "based on outdated science" and citing to *Bartlett*, *Williams*, *Newsome*, and *Phillips*. (R. 167 at 10–11.) *Hall* and *Carter*, however, remain good law and support the exclusion of Dr. Paller's testimony under Rule 702, *Daubert*, and Rule 403. *See also supra* (discussing differences between this case and *Williams*, *Newsome*, and *Phillips*). Additionally, as discussed above, *Bartlett* supports excluding Defendant's expert testimony under Rule 403.

Second, Defendant's attempts to circumvent *Carter* fail. Defendant argues that *Carter* is factually distinguishable because in that case, "the record demonstrated that the identification was reliable." (*See* R. 167 at 11–12.) The *Carter* court, however, did not discuss the reliability of the identification in its section analyzing whether the district court properly excluded an expert witness on memory. 410 F.3d at 949. Moreover, the *Carter* court affirmed the exclusion of the expert, relying in part on the fact that the witness "was cross-examined on his ability to perceive, remember, and identify" the defendant. *Id.* at 950. Here, Defendant will have the same opportunity to test the reliability of the witnesses.

Defendant also contends that *Carter* is distinguishable because it did not present "an unusual or compelling situation in which the aid of an expert witness is required." (R. 167 at 12 (quoting *Carter*, 410 F.3d at 950).) In this case, Defendant argues, such a situation presents itself because there are child witnesses. (*Id.*) Defendant has never indicated, however, that Dr.

15

Paller's expertise or testimony focuses or even touches on perception and memory in children. The Court, therefore, does not find Defendant's argument persuasive.

Finally, Defendant argues that *Carter* is distinguishable because in that case, "the government had significant additional evidence" corroborating the eyewitness testimony. (R. 167 at 13 (quoting *Carter*, 410 F.3d at 950).). As noted above, in the current case there is additional evidence corroborating the eyewitness testimony at issue, including a video that captures many of the events on the day in question and multiple witnesses who corroborate one another. Additionally, the existence of corroboration was merely one of three "additional considerations" upon which the *Carter* court relied. 410 F.3d at 950. Consequently, Defendant's final argument fails.

As a final note, the Court points out that Defendant has consistently failed to meet Court-mandated guidelines. Defendant disclosed her intention to call a perception and memory expert—a perception and memory expert different from the one it now intends to call—on the day of the expert-disclosure deadline. (*See* R. 131.) Defendant then petitioned the Court for funds for its expert on September 29, 2016, six days after the expert-disclosure deadline. (R. 140.) At a hearing on October 4, 2016, the Court ordered Defendant to file a proffer of Dr. Paller's anticipated testimony by the end of the day. (R. 148.) Defendant did not file this proffer. Then, at an October 7, 2016 hearing, the Court ordered Defendant to file a response to the government's *Daubert* motion by October 14, 2016. (R. 156.) Defendant filed that response on October 17, 2016—just seven days before the trial commences. The Court has been willing to forgive the occasional missed deadline, but at some point the deadlines are essential for effective preparation, especially as trial rapidly approaches. *See United States v. Winbush*, 580 F.3d 503, 508 (7th Cir. 2009) ("It is well settled that issues of trial management are left to the

district judge, and 'we intervene only when it is apparent that the judge has acted unreasonably.'" (quoting *Brooks v. United States*, 64 F.3d 251, 256 (7th Cir. 1995))); N.D. Ill. Local R. 78.3 ("Failure to file a supporting or answering memorandum shall not be deemed to be a waiver of the motion or a withdrawal of opposition thereto, but the court on its own motion or that of a party may strike the motion or grant the same without further hearing."); *see also United States v. Ali*, 735 F.3d 176, 192 (4th Cir. 2013) ("On the untimeliness issue, the court clearly had broad discretion to manage the docket and to impose binding time limits on the disclosure of evidence.").

## CONCLUSION

For the foregoing reasons, the Court grants the government's motion to exclude the testimony of Dr. Paller under Rules 702 and 403. Additionally, the Court denies Defendant's Criminal Justice Act request for expert assistance. *See* 18 U.S.C. § 3006A(e).

**Dated:** October 20, 2016                                     **ENTERED**

                                                                                 AMY J. ST. EVE
                                                                                 United States District Court Judge