# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 16 CR 80 |
| v. ) | |
| ) | Hon. Amy J. St. Eve |
| VANDETTA REDWOOD ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Vandetta Redwood ("Defendant") moves to bifurcate the proceedings to prevent the government "from discussing and eliciting any testimony regarding the aggravated penalty under [18 U.S.C. §] 924(a)(6)(B)(ii) before the jury convicts on the underlying substantive offense[ under 18 U.S.C.§ 922(x)(1)]." (R. 161, Def.'s Mot. Bifurcate, at 1.) As the Court previously explained at the October 21, 2016 hearing, the Court denies Defendant's motion.

## BACKGROUND

On February 10, 2016, a grand jury returned a two-count indictment against Defendant. (R. 1.) Count One charges Defendant with transferring a handgun and ammunition, namely, a loaded Smith & Wesson, Model 642 Airweight, .38 special caliber revolver, bearing serial number CRZ6547, to a minor named Destiny, knowing and having reasonable cause to believe that Destiny was a juvenile, in that she had not attained eighteen years of age, and knowing and having reasonable cause to believe that Destiny intended to carry and otherwise possess and discharge and otherwise use the handgun and ammunition in the commission of a crime of violence, namely first degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm, in violation of 18 U.S.C. §§ 922(x)(1)(A), (B) and 924(a)(6)(B)(ii).[1] (*Id.*)

---

[1] The government has since withdrawn its charge under 922(x)(1)(B).

The government later filed a superseding indictment adding second degree murder to the list of crimes of violence. (R. 191.) Count Two charges Defendant with knowingly possessing in and affecting interstate commerce a firearm, namely, the same handgun identified above in Count One, which had traveled in interstate commerce prior to Defendant's possession of the firearm, within a distance of 1,000 feet of the grounds of Oliver Wendell Holmes Elementary School and Visitation Catholic School, a place that Defendant knew and had reasonable cause to believe was a school zone, in violation of 18 U.S.C. §§ 924(q)(2)(A) and 924(a)(4). (R. 1; R. 191.)

The charges against Defendant are premised on events that took place on April 28, 2014, during a fight among high school students. Defendant is charged with giving Destiny, her then 14-year old cousin, a loaded firearm and telling her to shoot another 14-year old girl, Endia. Destiny then used the firearm to shoot two teenage girls (Endia and her 16-year-old friend, Niki), killing Endia. The government alleges that Destiny arrived at the scene with the firearm and then gave the weapon to Defendant because it was not functioning. (R. 186 at 5.) Defendant then fixed the firearm, gave it back to Destiny, told Destiny to "shoot that bitch," then then Destiny opened fire. (*Id.*) Niki was shot and wounded, and Endia was shot in the back as she ran toward a house. (*Id.* at 6.) Niki later saw Endia in the kitchen of the house, bleeding profusely (*Id.* at 7.)

Defendant moved to bifurcate the proceedings as to culpability and penalties. Defendant sought to bifurcate evidence regarding the shooting and murder of 14-year-old Endia and any evidence that Defendant transferred the gun with knowledge that Destiny would use it for a crime of violence. She requested the Court defer admission of any such evidence until when and if the jury found Defendant guilty of section 922(x)(1). The Court previously denied Defendant's motion in part in a detailed oral ruling on October 21, 2016, taking under

2

advisement the issue of whether to bifurcate the proceedings to allow Defendant to testify regarding § 924(a)(6)(B)(ii), but not the other charges against Defendant.. The Court incorporates that ruling herein. The Court subsequently asked for additional briefing regarding whether to defer any evidence of the murder of Endia until when and if the jury found Defendant guilty on Count One without the enhanced penalty. For the reasons addressed at the October 21 hearing as well as the reasons set forth below, the Court denies this aspect of Defendant's motion.

## ANALYSIS

Under § 922(x)(1), it is illegal "for a person to sell, deliver, or otherwise transfer to a person who the transferor knows or has reasonable cause to believe is a juvenile" a handgun or "ammunition that is suitable for use only in the handgun." Under 924(a)(6)(B)(ii), a person other than a juvenile who knowingly violates § 922(x) is subject to a maximum of ten-years imprisonment "if the person sold, delivered, or otherwise transferred a handgun or ammunition to a juvenile knowing or having reasonable cause to know that the juvenile intended to carry or otherwise possess or discharge or otherwise use the handgun or ammunition in the commission of a crime of violence." Defendant seeks to bifurcate the proceedings to separate evidence related to § 924(a)(6)(B)(ii) from evidence related to § 922(x)(1). Specifically, Defendant seeks to bifurcate evidence regarding the shooting and murder of 14-year-old Endia to a separate penalty phase. (R. 161 at 2.)

As a preliminary matter, the Court denies Defendant's motion to the extent she relies on Federal Rule of Evidence 404(b). As the Court explained in October, Rule 404 is inapplicable. There is no "other act" at issue. The shooting incident is direct evidence of the § 922(x)(1) offense as well as the enhancement.

3

The remainder of Defendant's argument is that, under Federal Rule of Criminal Procedure 14 and Federal Rule of Evidence 403, neglecting to bifurcate the trial invites too high a risk of unfair prejudice, particularly from the jury hearing evidence of the murder of a teenager. (R. 161 at 2–3.) Rule 14 controls the question of bifurcation, as it gives district courts discretion to, among other things, bifurcate a trial into two phases when it appears that the joinder of offenses will prejudice a party. Whether or not to bifurcate a trial is subject to the district court's discretion. *See United States v. Alviar*, 573 F.3d 526, 545 (7th Cir. 2009); *see also United States v. Davis*, 724 F.3d 949, 956 (7th Cir. 2013) (explaining that the Seventh Circuit "will reverse a conviction 'only if actual prejudice resulted from the denial of the severance motion [under Rule 14(a)], and such prejudice requires that the defendant have been deprived of a fair trial, not merely a better chance at acquittal than an individual trial may have afforded'" (quoting *United States v. Morales*, 655 F.3d 608, 624 (7th Cir. 2011)); *United States v. Alexander*, 30 F. Supp. 3d 499, 504 (E.D. Va. 2014) (explaining that Rule 14 requires a defendant seeking bifurcation "demonstrate a 'strong showing of prejudice'" (quoting *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984))).[2] In this case, the Court concludes that bifurcation is not warranted.

First, courts generally do not bifurcate the elements of a single offense. *See United States v. Yakobowicz*, 427 F.3d 144, 152 (2d Cir. 2005); *United States v. Birdsong*, 982 F.2d 481, 482 (11th Cir. 1993) ("A request to bifurcate the presentation of evidence on different elements of a single offense is extremely rare."); *United States v. McPhaul*, No. 1:14-cr-00203-TWP-TAB, 2015 WL 4617462, at *1 (S.D. Ind. July 31, 2015) (citing *United States v. Barker*, 1 F.3d 957,

---

[2] Rule 403 does not govern the question of whether to bifurcate proceedings. Nevertheless, the Court notes that it will not exclude evidence of the shooting or Endia's killing for the same reasons it will not bifurcate the trial and because the evidence of the shooting and murder are of the utmost importance to the government's case under § 924(a)(6)(B)(ii).

4

960 (9th Cir. 1993), for the proposition that "bifurcation of elements of an offense prevents the Government from having its case decided by the jury and changes the nature of the crime charged"). Under *Alleyne v. United States*, 133 S. Ct. 2151, 2162 (2013), "[w]hen a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." Thus, the crime-of-violence component of § 924(a)(6)(B)(ii) "constitutes an element of a separate, aggravated offense." *Id.* The Court therefore declines to bifurcate the proceedings as to only the crime-of-violence issue.

Second, courts have not bifurcated proceedings when dealing with similar statutes that increase penalties for crimes committed under particular circumstances—such as statutory enhancements based on drug quantity or carrying/brandishing/using a firearm during and in relation to a crime of violence or drug trafficking crime. *See* 18 U.S.C. § 942(c)(1)(A); 21 U.S.C. § 841(b); *United States v. Alviar*, 573 F.3d 526, 544–45 (7th Cir. 2009) (affirming a court's denial of a motion to bifurcate the issues of guilt for a drug conspiracy and the penalty based on drug quantity); *United States v. Pomranz*, 43 F.3d 156, 161 n.7 (5th Cir. 1995) ("[A] prosecution for carrying or using a firearm cannot be bifurcated from the underlying drug crime."); *United States v. Westry*, No. 05-0206-WS, 2006 WL 538885, at *3–4 (S.D. Ala. Mar. 3, 2006) (declining to bifurcate (1) the "death enhancement" provision of 21 U.S.C. § 841(b)(1)(A) from a charge of a drug conspiracy, and (2) the public school enhancement of 21 U.S.C. § 860 from the drug-conspiracy charge); *see also United States v. Adams*, 418 F. App'x 688, 691–92 (10th Cir. 2011). In opting against bifurcation, courts seek to avoid inefficiency, redundancy, and juror confusion, particularly where proof of the underlying crime is intertwined with proof related to the penalty. *See, e.g.*, *Pomranz*, 43 F.3d at 161 n.7; *Westry*, 2006 WL

538885, at *3.  Here, as explained further below, the government's proof under § 922(x)(1) overlaps with its proof under § 924(a)(6)(B)(ii).  Accordingly bifurcation is unjustified.[3]

Third, bifurcating evidence of the fact that Endia was shot and killed is unwarranted because Endia's murder is direct evidence supporting the government's case under § 922(x)(1). Evidence that Endia was shot in the back and killed with a bullet from the gun in question is probative of the fact that Destiny at one point possessed a gun.  It also is probative of the fact that the object the government alleges Defendant transferred to Destiny was a firearm. Additionally, the evidence of the killing completes the government's narrative.  It explains why Destiny, who the government contends arrived at the scene with the firearm, gave the gun to Defendant briefly before Defendant transferred it back to her—namely, so Defendant could fix the firearm, which was not functioning properly, allowing it to cause harm.  The evidence of the killing also gives force to the government's theory of Defendant's motive: that she gave the gun to Destiny so she could shoot to kill.  Additionally, the government will present a recording of Defendant's post-arrest statement, which includes a discussion of Endia's death.  This recording and its reference to Endia's death provides context for Defendant's false exculpatory statement that she was not present at the scene of the shooting (for example, Defendant may have lied because, after hearing about Endia's death, she knew she might face serious criminal penalties). For these reasons, it is inappropriate to bifurcate the proceedings as Defendant requests.  *See United States v. Rollins*, 301 F.3d 511, 519 (7th Cir. 2002) ("It is well settled that 'prejudice

---

[3] Defendant relies on *United States v. Joshua*, 976 F.2d 844, 846–48 (3d Cir. 1992), where the Third Circuit approved of the district court's decision to bifurcate a felon-in-possession of a firearm charge from counts of armed bank robbery, use of a firearm during a crime of violence, and receipt of a firearm with an obliterated serial number. The situation presented there is distinguishable because proof of the defendant's criminal record was not directly relevant to the other counts.  In the current case, Defendant's criminal record is not at issue and evidence of the shooting and Endia's murder is, as explained below, direct evidence supporting the government's charge under § 922(x)(1).  Moreover, also as explained below, this evidence is necessary for the government to present a full picture of its case to the jury without leaving large conceptual gaps.

6

requiring severance is not shown if evidence on the severed count[s] would be admissible in the trial of the remaining counts.'" (quoting *United States v. Rogers*, 475 F.2d 821, 828 (7th Cir. 1973))); *see also Old Chief v. United States*, 519 U.S. 172, 186–87 (1997) (explaining that generally the government may "prove its case by evidence of its own choice").

Fourth, bifurcating the murder from the firearms offense will leave a hole in the government's narrative. Without the testimony of what happened to Endia, the government's case is incomplete. The government's evidence of Defendant's motive to transfer the firearm will be weaker, and jurors might assume that Endia did not testify because her testimony would have been unfavorable to the government. Even if jurors did not make this assumption, they are likely to be confused by the gap in the narrative as to Endia's fate. The Court declines to invite jury speculation and will avoid creating a confusing gap in the government's case. *United States v. Pulido*, 69 F.3d 192, 202 (7th Cir. 1995) (declining to exclude evidence of a triple murder in a trial regarding drug charges because it would "have created a chronological and conceptual void" in the government's case (internal quotation marks omitted)); *United States v. Neeley*, 189 F.3d 670, 682 (7th Cir. 1999) ("[E]xclusion of evidence would leave jury with 'a sanitized version of the crime with too many gaps and questions left dangling . . . thus forcing the jury to speculate.'" (quoting *United States v. Vretta*, 790 F.2d 651, 656 (7th Cir. 1986))).

Fifth, bifurcation would require the victim, Niki, to testify twice. Niki, who was 16-years-old at the time, was shot and wounded. She will testify about the events leading up to the traumatic shootings, the shootings themselves (including her own), and having seen Endia dying from a gunshot wound. Under Defendant's request, Niki, who is only a teenager, would have to come back and testify again during the second phase about finding Endia in the kitchen bleeding profusely. Niki's testimony regarding Endia is necessary in part to rebut Defendant's theory that

Destiny was not the shooter.[4]  Under 18 U.S.C. § 3771, Niki is afforded certain protections as a victim of a crime, including the "right to be treated with fairness and respect" and the "right to proceedings free from unreasonable delay."  The Court is reluctant to further prolong this criminal proceeding and force Niki, who was sixteen when she was shot and saw her close friend killed, to testify twice at the trial of the woman whom the government alleges willingly provided Destiny with a gun that she used to shoot Niki and Endia.  *See United States v. Colon-Nales*, 464 F.3d 21, 29 (1st Cir. 2006) (explaining that it would be a threat to the integrity and fairness of judicial proceedings to remand a case for a new trial in which a carjacking and rape victim would have to testify twice); *United States v. Powell*, No. Cr15-244RAJ, 2016 WL 524251, at *8 (W.D. Wash. Feb. 10, 2016) (denying a motion to sever in part because it would force witnesses to testify twice).  Additionally, beyond subjecting Niki to the stress of testifying twice in this case, it will be practically difficult for her to give an accurate account from her memory while avoiding mentioning the defining moment of the shooting incident: when Destiny shot and killed her close friend.  Forcing a teenager testifying about a traumatic experience to tip-toe around the most traumatic aspect of that experience is not reasonable.  Additionally, forcing Niki to testify as such could impact her demeanor unfairly, negatively affecting her credibility, as she will need to worry about complying with a court order regarding the subject-matter of her testimony on top of accurately recounting a painful experience.

Bifurcation may also force various minor witnesses who were present at the incident in question to testify twice.  The Court previously granted the government's motion for a speedy trial under 18 U.S.C. § 3509(j), (R. 15), which requires the Court to ensure a speedy trial to reduce stress on child witnesses.  After having delayed proceedings twice on the eve of trial at

---

[4] While the Defendant has indicated that she will not call a ballistics expert, she has not indicated that she has abandoned the theory that some other person shot Endia.

Defendant's request (including once on what was supposed to be the first day of trial for the preparation of an expert report that Defendant later opted not to submit), the Court does not want to further prolong proceedings, potentially interfere with the schedules of minor witnesses, and possibly subject them to the stress of testifying twice in a case in which one of their peers shot two other teenagers, killing one of them.

Finally, jury instructions mitigate the potential unfair prejudice to Defendant and therefore eliminate the need for bifurcation. The Court will instruct the jury that they should consider each count and the evidence relating to it separately. *See United States v. Davis*, 724 F.3d 949, 956–57 (7th Cir. 2013) ("[T]he district court diminished any spillover prejudice by instructing the jury that '[e]ach count and the evidence relating to it should be considered separately.'" (quoting *Zafiro v. United States*, 506 U.S. 534, 539–41 (1993)); *id.* (citing *United States v. Pacente*, 503 F.2d 543, 578 (7th Cir. 1974), for the proposition that "jury instruction directing separate consideration of counts are a 'meaningful safeguard' against a prejudicial spillover between counts"). The Court will also give a number of other instructions that should mitigate prejudice to Defendant. First, the Court will give an instruction that jurors should only consider the crime-of-violence issue if they find Defendant guilty under § 922(x)(1). Second, the Court has invited the parties to formulate an instruction that evidence of the killing can only be considered for the issues of whether the transfer of the firearm occurred and whether Defendant knew or had reasonable cause to know that Destiny intended to use the firearm in the commission of a crime of violence. Third, the Court also will give an instruction if Defendant wants, indicating that Defendant is not charged with murder. These instructions, which the jurors are presumed to follow, *id.*, sufficiently reduce the need for bifurcation to protect Defendant from unfair prejudice, *see United States v. Carter*, 695 F.3d 690, 701 (7th Cir. 2012)

("[L]imiting instructions will often cure any risk of prejudice, and tailoring relief from prejudice is within the district court's discretion.") In addition, Defendant may propose an additional instruction if she deems it appropriate.

## CONCLUSION

For the foregoing reasons, Defendant's motion to bifurcate is denied except to the extent the Court has taken under advisement the issue of whether to bifurcate the proceedings to allow Defendant to testify regarding § 924(a)(6)(B)(ii) but not § 922(x)(1).

**Dated:  January 10, 2017**                **ENTERED**

_____
AMY J. ST. EVE
United States District Court Judge